## LOUISIANA HIGHWAY COMMISSION v. MERCHANT.

### No. 5446.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

N. S. Hoffpauir, of Crowley, and E. R. Stoker, of Baton Rouge, for appellant.

George J. Ginsberg, of Alexandria, for appellee.

TALIAFERRO, Judge.

This is an expropriation suit wherein the Louisiana Highway Commission seeks to have adjudicated to it for highway right of way purposes a small tract of land of trapezium form, containing .31 of an acre, in the northwest corner of lot 3 of the partition of northwest ¼ of northwest ¼ of section 12, township 4 north, range 1 west, containing 5 acres, all owned by defendant, and situated in Rapides parish.

The necessity for taking the land was challenged in answer, but that defense is now abandoned. The market value of the land sought and resultant damages, if taken, to the remainder of the tract are strenuously contested issues. Defendant prays for an award of $1,000. The jury of freeholders gave her $896. The verdict indicates that the land alone was appraised at this figure, but evidently the jury included therein an amount to cover damages also. From a judgment based upon the jury's verdict, plaintiff prosecutes this appeal.

Lot 3 referred to is a rectangle. Its north end measures 174 feet, east and

west. It is unimproved cut-over hill land, and drains southerly. Some time prior to the institution of this suit, defendant donated to plaintiff for right of way purposes a very small triangle in the northwest corner of the lot. This donated tract has a base (north side) of 20 feet, altitude of 80 feet, and hypotenuse of 86 feet. It is included in the right of way of the new road leading from the new bridge across Red river above the city of Alexandria to a point on the present Jefferson Highway (route No. 71) near the United States Veterans Hospital, which is north of the town of Pineville. We shall herein refer to this part of the road as new route 71. The 86-foot line of the triangle is the measure of frontage of defendant's remaining acreage on the right of way of the new route 71. Prior to the construction of this new road, the entire lot was assessed at $15 per acre. Its proximity to Pineville, the tax assessor ascribes as the reason for this valuation being so greatly in excess of that fixed for cut-over lands of same character differently situated. In order to provide a direct route for traffic over the new bridge, destined for points due north and northeasterly, plaintiff decided to build a short line of new standard highway to connect the new route 71 with the present route 167, which runs north to the city of Monroe, La., at a point a few miles north of Pineville. This concrete portion of the new connecting road will diagonally cross the northwest corner of said lot No. 3 and intersect the new route 71 a short distance west of the lot's west line. The parcel of .31 acre is needed for the right of way of this new link. Its north line is 105 feet, its east line is 263 feet, and its west boundary consists of the 86-foot line of the original triangle donated plaintiff and a continuation line of 145 feet along the west side of the lot. The donated tract supplemented by the .31 acre tract forms a right angle triangle, the base (north end) of which is 125 feet, the hypotenuse being 263 feet. Plaintiff will be left with only a frontage of 49 feet on her north line adjacent to an unopened roadway 20 feet wide. She also loses 225 feet off the north end of the west boundary of her lot.

The width of the right of way of the new route 71 is 140 feet, and that for the new connection is 120 feet. The concrete slab that will be laid in the center of both roads will be 20 feet wide. But for the construction of the new link, defendant's west line would have been 60 feet from the concrete on new route 71, and with the construction of the new link, her west line will be 50 feet from the concrete thereon, and approximately 165 feet from that on new route 71, on her north line, the distance growing less towards the south, and finally ending at approximately 75 feet. It is conceded that but for the presence of new route 71 the trapezium shaped tract involved would be worth very little. It is contended that the building of this new road from the bridge created commercial possibilities for the land which immensely enhanced its value, and that these commercial possibilities will be practically destroyed by the building of the new link to route 167. It is argued that since the frontage of 263 feet is so far removed from new route 71, that all the advantages accruing to the land following its construction will be effaced, and not compensated for by the presence of the new connecting link. It is a fact, established by the record, that the .31 acre tract is more valuable, proportionately, than any other part of the lot, but we are not convinced from the testimony bearing thereon that some, if not all, of the 263 feet frontage could not be utilized commercially to the same practical extent as the .31 acre tract could have been. Whether this could be done so as profitably, no one can tell. Traffic on the new link will not be quite so heavy as that on new route 71. It would seem not improbable, however, that a commercial establishment near the lower end of the 263 feet line would draw patronage from traffic over both new routes. At that point, it appears certain that the triangular space between the two 20-foot concrete slabs will be hard-surfaced for a considerable distance northerly. It is true that the terrain thereabout is not as well adapted for business locations as is the .31 acre tract. More expense, perhaps, would have to be entailed to put it in condition for such purposes.

The facts of this case are rather unique. We are sure no parallel may be found in the many cases reported wherein private property was taken for public purposes. If plaintiff had sought to condemn the land prior to building new route 71, its market value at that time, without regard to the contemplated improvement, would have been the true criterion upon

which to base an award. Such value would have been quite modest. By building new route 71, plaintiff has directly caused the value of defendant's property to enhance greatly with small contribution from her. By taking the .31 acre tract, plaintiff will, to some extent, diminish the advance in value which its own action recently created.

Testimony bearing upon the value of the .31 acre tract and the damage to the remaining land with this tract cut off, as is usual, is exceedingly conflicting. One realtor of the city of Alexandria estimates this tract's value at practically $60, on a basis of $175 per acre, while another realtor of same city is sure the parcel is well worth $500, a basis of $1,500 per acre. The jury nearly doubled this valuation by its verdict. All things considered, we are convinced that defendant will suffer some damage by the loss of this land from her tract. It is humanly impossible to definitely fix the amount. There are equities in favor of plaintiff arising from the unique facts of the case. We are also convinced that the jury's verdict is excessive. An award of $500 for the value of the land and damages resulting from its taking will be adequate.

■ The weight that should be given to the jury's verdict in expropriation cases is urged upon us. We are not unmindful of the law's wise policy in ordaining that private property may be taken for public purposes only after the value of such property and consequent damages have been fixed by a jury of freeholders. However, courts have the inherent power, and have invariably exercised it, to review the jury's award in such cases and correct errors by them made when obviously disclosed. In the case of Louisiana Highway Commission v. Haney, 158 So. 243, we were constrained to reduce the award one-third, and in the more recent case of the Louisiana Highway Commission v. Watkins et al., 172 So. 185, not yet reported [in State Report], after a very careful study of the testimony, we felt warranted in increasing the jury's award nearly 100 per cent. The Supreme Court in many cases has increased or reduced valuations fixed by juries when the testimony justified doing so. In close cases, great deference is shown such verdicts. Invariably the landowner has been generously treated.

Plaintiff offered defendant $200 for her land before this suit was filed. This was done out of a desire to avoid the delay litigation would necessarily cause to the completion of the new road. The offer was refused. Counsel for plaintiff argue that on the basis of the highest price paid for rights of way in the vicinity of defendant's tract, she is entitled to no more than $155.

Articles 2627 and 2628 of the Civil Code read:

"2627. If the owner of a thing necessary for the general use, refuses to yield it, or demands an exorbitant price, he may be divested of the property by the authority of law.

"2628. In all cases, a fair price should be given to the owner for the thing of which he is dispossessed."

■ Article 2633 lays down a clear and a fair rule to govern the measure of value of property taken for public purposes. It reads:

"In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."

■ This law has been invariably followed in a long line of cases. The rule is as equally applicable to the state and its governmental agencies as it is to private corporations. State ex rel. City of New Orleans v. Ellis, Judge, 113 La. 555, 37 So. 209.

■ The price paid for neighboring property for right of way purposes is admissible to show value. Any objection to deeds therefor goes to the effect. Louisiana Ry. & Nav. Co. v. Morere, 116 La. 997, 41 So. 236.

In Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854, 855, it is said:

"It is well settled that the criterion of value is the market value of the property at the date of the institution of the expropriation suit, in view of any use to which it may be applied and of all the uses to which it is adapted, exclusive of any increase in value given by the construction of the railway thereon. The market value means the fair value of the property between one who wants to purchase and one who wants to sell, under

usual and ordinary circumstances. Market value does not mean speculative value. Louisiana Ry. & Nav. Co. v. Baton Rouge Brickyard, 136 La. 833, 67 So. 922, L.R.A. 1917A, 402; Orleans & J. R. Co. v. Jefferson & L. P. R. Co., 51 La.Ann. [1605] 1616, 26 So. 278; Louisiana Ry. & Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1."

For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to $500, and, as thus amended, said judgment is affirmed. All costs are assessed against plaintiff.