HAWTHORNE, Justice.
 

 In this suit the plaintiff, Calcasieu and Southern Railway Company, a Louisiana corporation, is seeking to expropriate a right of way across the land of the defendants, John Albert Bel and others. There was judgment in favor of the plaintiff, and the defendants have appealed.
 

 For the proposed right of way the court awarded to defendants the sum of $2125, and they do not complain of the amount of the award. The only issue in this case is the right of plaintiff to expropriate defendants’ property.
 

 According to the charter of the plaintiff corporation, the objects and purposes for which it was organized were:
 

 . “a. To engage in the business of : transportation of freight, mail and express as a common carrier.
 

 “b. To purchase, construct, * * ■ * operate * * *' railroads; railroad lines and railroad properties * * * for the transportation of freight, mail and express.’’
 

 At the time of the trial, rights of way had been secured from some other landowners, and the plaintiff corporation was actually engaged in the construction of a railroad. It was the intention of the plaintiff to build dirt embankments, to cut a grade where needed, to put in ballast, to lay crossties and steel rails, and to haul freight in railroad cars. The plaintiff had already spent in actual construction some $25,000, and planned to spend a total of $150,000 or more in the construction of this railroad. The railroad is to be located in Allen Parish, and is to begin on the south at a sand and gravel plant owned by Gifford-Hill & Company, Inc., and to run to the trunk line of the N. O. T. & M. Railroad Company (a part of the Missouri-Pacific system) on the north, a distance stated to be less than seven miles.
 

 All of the stock of the plaintiff corporation is now owned by Gifford-Hill & Company, Inc., a large sand and gravel company, and the directors and officers of the plaintiff corporation, with one exception, are directors and officers of Gifford-Hill. Gifford-Hill is able to finance the entire project and plans to do so by taking the notes of the plaintiff corporation secured by its assets. Further, the principal business of the railroad will be derived froft Gifford-Hill & Company, Inc., which expects to ship over this railroad some 50
 
 *274
 
 carloads of sand and gravel per day from its gravel pit at one of the termini.
 

 A large part of defendants’ brief is devoted to the argument that plaintiff is not and has never been a common carrier railroad, and that therefore the right of expropriation must be denied to it. They argue and contend that the Louisiana Public Service Commission is vested preliminarily and primarily with the right and authority to determine whether the corporation is a common carrier, subject, of course, to review by the courts; that such recognition can and must come only from the commission, and that the. failure of the plaintiff to' have its common carrier status established by the commission is fatal to its exercise of the right of eminent domain.
 

 We know of no constitutional provision ór statutory authority, nor is any cited by defendants, which requires the common carrier status of a corporation to be determined by the Louisiana Public Service Commission before the corporation may exercise the right of eminent domain. In effect, what the defendants are urging is that the public service commission should participate in deciding whether the property is being taken for public purpose and utility.
 

 It is the duty of the court in this case, as in all expropriation cases where ■the question of public use is at issue; to decide on the facts presented whether the taking is for a public purpose or use. The determination of this question is strictly a judicial function, and what was said by this court in River & Rail Terminals, Inc., v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337, 339, is pertinent here:
 

 “The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense .of that term. The power of eminent domain is not conferred upon the Commission, and it is powerless * * * to take away from the courts of this state their exculsive right to pass upon the question as to what constitutes public utility and public purpose in matters of expropriation.”
 

 The right of railroad corporations to expropriate property is provided' for in Article 2630 of the Civil Code: • ■
 

 “Whenever any corporation, constituted under the laws of this State, for the construction of a railroad, plank-road, turnpike road, a canal for navigation, or for the purpose of transmitting intelligence by magnetic telegraph, can not agree with the owner of any land which may be wanted for its purchase, it shall be lawful for such corporation to apply by petition to the judge of the district court * * *, describing the lands necessary for. their purposes, with a plan of the same, and a statement of the improvements thereon, if any, and the name of the ■
 
 *276
 
 owner thereof, if known and present in the State, with a prayer that the land be adjudged to such corporation upon the payment to the owner of all such damages as he may sustain in consequence of the expropriation of his land for such public work. All claims for land, or damages to the owner caused by its expropriation for the construction of any public works, shall be barred by two years’ prescription * *
 

 The plaintiff by its charter is an organization constituted under the laws of this state for the construction of a railroad, and is thus a corporation to which this article gives the right of expropriation.
 

 Under Article 1, Section 2, of our Constitution, no person shall be deprived of life,- liberty, or property except by due process of law, and except as otherwise provided in the Constitution private property shall not be taken or damaged except
 
 for public purpose
 
 and after just and adequate compensation is paid. Further, in Article 4, Section 15, it is provided that 'rested rights shall not be divested unless for purposes of
 
 public utility
 
 and for just and adequate compensation previously paid.
 

 By virtue of these constitutional provisions, the plaintiff corporation, although one which may exercise the right of eminent domain under the Code article, does not have the absolute right of eminent domain. Plaintiff could not expropriate private property under the authority of the Code article without regard to the purpose involved, for this would be giving to the article an unconstitutional application. For a constitutional application of the article, the taking of the property by the plaintiff must be for a public purpose and utility as provided in the Constitution.
 

 Accordingly the issue to be determined is whether the property which plaintiff seeks to expropriate is being taken for a public purpose or .for purposes of public utility.
 

 Defendants argue at length that the plaintiff is not a common carrier; but the common carrier statute of the plaintiff is not the only criterion by which this case must be judged, for, even though the plaintiff has the status of a common carrier, it nevertheless does not have the right to take private property unless such taking is for public use or the purposes of public utility. We must look at the evidence presented, therefore, to determine whether the property is to be taken for a public purpose or for purposes of public utility.
 

 Plaintiff has established that upon completion of the railroad now under construction its facilities would serve the public generally and any industries located near its tracks, and that it hoped to move and transport over its line timber, pulpwood, and other forest products, graveí, rice, and cattle; that all of these commodi
 
 *278
 
 ties will be available for shipment over the line. Furthermore, it was established by plaintiff that lumber corporations, owners of large tracts of land situated in the vicinity of the proposed rail line, and purchasers of forest products, such as cross-ties, lumber, etc., would and could make use of the facilities of this railroad in the shipment of these products.
 

 It was shown that the railroad will serve the public, and that the public may use and enjoy its facilities; that the .construction of the road will be a public advantage and will tend to enlarge the resources, increase the industrial energies, and promote the productive powers of a considerable number of the inhabitants or businesses of a section of this state, and manifestly will contribute to the general welfare and prosperity of the community in which it is located. Consequently the taking is for public purposes and for purposes of public utility, within the meaning of those terms as they are used in the Constitution. For the meaning of “public use” and “for purposes of public utility”, see 2 Nichols on Eminent Domain, § 7.2, p. 429; § 7.2(1), p. 430; § 7.2(2), p. 433.
 

 To support their argument that the taking of the property involved in this case is not for public purposes, defendants cite and rely principally on. the following cases: New Orleans Terminal Co. v. Teller, 113 La. 733, 37 So. 624; Kansas City, S. & G. R. Co. v. Meyer, 166 La. 663, 117 So. 765; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; River & Rail Terminals, Inc., v. Louisiana Ry. & Nav. Co., supra; Kansas City, S. & G. Ry. Co. v. Meyer, 10 La.App. 521, 120 So. 700. None of the cited cases is pertinent to, or determinative of, the issue in the instant case.
 

 Defendants contend that the purpose for which the property is sought is purely a private one because it is for the benefit of a private enterprise, Gifford-Hill & Company, Inc. This contention is based upon the fact that Gifford-Hill. is the owner of all the stock of the plaintiff corporation, that the officers and directors of Gifford-Hill are likewise officers and directors of the plaintiff corporation, that GiffordHill is going to provide the funds to finance the building and construction of the plaintiff railroad, and that the principal business of the plaintiff corporation will be the shipment of sand and gravel over this line by Gifford-Hill.
 

 There is no merit in this contention. The contention which defendants make here has been fully answered, and the identical issue was disposed of, in a decision of this court as well as in one of the United States Supreme Court, and anything that we might add here would be surplus-age. See Vicksburg, A. & S. R. Co. v. Louisiana & A. R. Co., 136 La. 691, 67 So. 553; United States v. Louisiana & P. R. Co. (The Tap Line Cases), 234 U.S. 1, 34
 
 *280
 
 S.Ct. 741, 58 L.Ed. 1185. See also Kansas City, S. & G. R. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627.
 

 ' For the reasons assigned, the judgment áppealed from is affirmed at appellants’ 'costs.